**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**JULIA LEMONS**                                                                                    **PLAINTIFF**

**V.**                             **CASE NO. 3:16-CV-00085-BD**

**NANCY A. BERRYHILL, Acting Commissioner
Social Security Administration**                                                            **DEFENDANT**

**ORDER**

**I. Introduction:**

Plaintiff, Julia Lemons, applied for disability benefits on June 4, 2013, alleging a disability onset date of September 1, 2009.  (Tr. at 12)  After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 24)  The Appeals Council denied her request for review.  (Tr. at 1)  The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Lemons has requested judicial review.

For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

**II. The Commissioner's Decision:**

The ALJ found that Ms. Lemons had not engaged in substantial gainful activity since the alleged onset date of September 1, 2009.  (Tr. at 15)   At Step Two, the ALJ found that Ms. Lemons has the following severe impairments: degenerative disc disease ("DDD") of the cervical spine, status post-fusion, and osteoporosis of the lower back with chronic pain.  (Tr. at 15)

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

After finding that Ms. Lemons's impairments did not meet or equal a listed impairment (Tr. at 17), the ALJ determined that Ms. Lemons had the residual functional capacity ("RFC") to perform light work with additional limitations. Her job must require only occasional overhead reaching; she was limited to semi-skilled work, where interpersonal contact is routine, but superficial; the complexity of tasks is learned by experience, involves several variables, uses judgment within limits, and the supervision required is routine, but detailed for non-routine tasks. (Tr. at 17)

The ALJ found that Ms. Lemons could perform her past relevant work, which directed a finding of "not disabled." (Tr. at 22) The ALJ, however, made an alternative finding at Step Five. *Id.* He relied on the testimony of a Vocational Expert ("VE") to find that, based on Ms. Lemons's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform at the light level, specifically, bench worker and machine tender. (Tr. at 22) Based on that Step Five determination, the ALJ found that Ms. Lemons was not disabled. (Tr. at 24)

### III. Discussion:

A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is

"enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

      B.  Ms. Lemons's Argument on Appeal

Ms. Lemons argues that substantial evidence does not support the ALJ's decision to deny benefits because the ALJ gave inadequate consideration to the opinion of the treating physician, Rick Tate, M.D. Specifically, Ms. Lemons contends that the ALJ should have given more weight to the Medical Source Statement provided by Dr. Tate. She also argues that Dr. Tate suggested that she would require a sit/stand option, a restriction that the ALJ did not consider.

A treating physician is a physician who provided a claimant with medical treatment or evaluation and had an ongoing treatment relationship with the claimant. 20 C.F.R. § 416.902. A treating physician's opinion should be granted controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). An ALJ may grant less weight to a treating physician's opinion, however, when that opinion conflicts with other substantial medical

3

evidence in the record. *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000).

Ms. Lemons was diagnosed with cervical spondylosis, radiculopathy, and osteoarthritis after a car wreck in 2008. (Tr. at 307-311, 322-324) A review of x-rays of her cervical spine on September 11, 2008 showed osteoarthritis with no acute fracture or loss of alignment. (Tr. at 315) Another cervical x-ray on November 12, 2008 showed moderate degenerative changes with disc dessication at C5-C6. (Tr. at 325) Ms. Lemons told Daniel Jones, M.D., on November 12, 2008 that her pain was controlled by hydrocodone. (Tr. at 322) From 2008 to 2010, Ms. Lemons was treated conservatively with pain medication and home therapy. (Tr. at 307-311, 322-324, 355)

A CT of Ms. Lemons's lumbar spine on April 14, 2010 showed mild-to-moderate disc bulge and DDD at L3-L5. (Tr. at 327) A CT of the cervical spine showed mild-to-moderate stenosis at C5-C7. (Tr. at 330) Objective tests showing mild-to-moderate conditions do not support a finding of disability. *Masterson v. Banrhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).

On July 20, 2010, Robert Abraham, M.D., a neurosurgeon, performed an anterior cervical diskectomy with fusion at C5-C7. (Tr. at 361-362) At a follow-up appointment on August 20, 2010, Ms. Lemons said that her neck and right arm pain were relieved, but she was having pain in her left side and left hand. (Tr. at 379) Dr. Abraham noted that she had driven to the appointment without problems and had minimal muscle spasms. *Id*. He told her to continue her medications for pain and to continue activity. (Tr. at 380)

On December 20, 2010, Dr. Abraham diagnosed Ms. Lemons with lumbar radiculopathy, continued her on her medications, and referred her for physical therapy. (Tr. at 408) She did not begin physical therapy until July 18, 2013, almost three years after the referral. (Tr. at 454-458) See *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that failure to seek regular and available medical treatment undermines claim of disabling pain). Ms. Lemons attended eight physical therapy treatments in 2013 and was discharged for missing an appointment. (Tr. at 442-446) On September 3, 2013, she said that the therapy had helped with her back pain. (Tr. at 479) An impairment which can be controlled by treatment or medication is not considered disabling. *Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002). Ms. Lemons failed to follow her surgeon's recommendation for therapy for three years and then experienced relief when she did engage in therapy. This weighs against a finding of disability.

Ms. Lemons relies on Dr. Tate's opinion, who treated her beginning on October 14, 2011. At that time, she complained of neck pain and stiffness, which she said was controlled by Tramadol and Baclofen. (Tr. at 538) Dr. Tate diagnosed her with arthritis and continued her on medications. (Tr. at 534-541) He did not make a cervical or lumbar diagnosis.

On May 30, 2012, Ms. Lemons presented to Dr. Tate with bilateral hip pain and decreased range of motion. (Tr. at 526) He found no swelling, no difficulty in flexing the hip joint, no low back pain, and no numbness or weakness in the leg. *Id.* Dr. Tate

referred Ms. Lemons to a chiropractor for hip pain after x-rays showed arthritic changes in her hips. (Tr. at 526-529) There is no record that she ever saw a chiropractor. Again, failure to follow a course of treatment discredits Ms. Lemons's allegations of disabling pain.

In April and July of 2013, Ms. Lemons complained to Dr. Tate of pain in her left leg and said she was walking with a limp. (Tr. at 484-493) She said that her hip pain ran down both legs. *Id.* Dr. Tate prescribed ibuprofen and suggested moist heat and physical therapy. (Tr. at 488) In spite of her claims of hip pain, x-rays of Ms. Lemons's left hip were unremarkable and showed no fracture or dislocation. (Tr. at 587) While she also complained of ankle pain, there was no fracture or dislocation of the left ankle. (Tr. at 589)

On October 24, 2013, Roger Troxel, M.D., a state-agency consultative examiner, performed a physical examination. (Tr. at 596) He found limited range of motion in her hips, knees, and ankles, and decreased flexion of the lumbar spine. *Id.* However, she had no muscle spasms; her gait and coordination were normal; and straight-leg raises were negative. *Id.* Dr. Troxel found that Ms. Lemons could stand and walk without assistive devices, could squat and rise from a squatting position, and had no functional limitations in her hands or fingers. (Tr. at 597) Dr. Troxel opined that Ms. Lemons had a mildly decreased ability to walk, stand, lift, and carry, and no significantly decreased ability to sit, handle, finger, see, hear, or speak. (Tr. at 598)

On April 14, 2014, Ms. Lemons saw Dr. Tate complaining of neck pain shooting down her body. (Tr. at 634) He found joint pain and stiffness, but noted that Ms. Lemons had normal gait, muscle strength, and tone. (Tr. at 638) Dr. Tate noted that Ms. Lemons was not adherent to her medication regimen but denied medication side effects. *Id.* An ALJ may discredit subjective allegations based on a claimant's failure to follow prescribed treatment. *Stone v. Harris*, 657 F.2d 210 (8th Cir. 1981)

On August 5, 2014 Ms. Lemons returned to Dr. Tate to get disability forms completed. (Tr. at 644) She complained at that time of pain in her back and left foot. He referred her to a podiatrist and told her to continue on her current pain medciations. (Tr. at 649) That same day, Dr. Tate filled out a check-box medical source statement. He indicated she could occasionally lift 20 pounds and frequently lift 10 pounds. (Tr. at 641) She could stand and walk for a maximum of 6 hours per day. *Id.* There was no limitation in her ability to sit. *Id.* Dr. Tate stated that Ms. Lemons would need to shift at will from sitting, standing, or walking. *Id.* He also opined, however, that she would not need frequent rest periods; she would have the physical stamina to complete a work day and work week; and she could maintain a full-time work schedule. *Id.* She could reach, finger, and handle for two-thirds of a normal work day. *Id.* In contradiction of these opinions, he concluded that she would miss 3 days per month due to impairments. (Tr. at 642)

The ALJ had good reason to give Dr. Tate's opinion less weight. Check-box

opinions are entitled to little weight in the evaluation of disability. See *Taylor v. Chater*, 118 F.3d 1274, 1279 (8th Cir. 1997). Moreover, Ms. Lemons failed to see a chiropractor despite Dr. Tate's recommendation, and she delayed in getting physical therapy for three years. Objective imaging showed only mild-to-moderate conditions. Dr. Troxel's examination revealed minimal postural limitations, which is consistent with the record as whole.

Furthermore, Ms. Lemons argues that Dr. Tate said she would require a sit/stand option, and that the ALJ erred by not including this restriction in the RFC. Dr. Tate did not suggest that, but rather, said she would need an opportunity to shift positions during the day. And that opinion itself is inconsistent with his other statements, as well as inconsistent with other doctors' treatment notes and the opinions of two state-agency doctors who said Ms. Lemons could perform medium work. (Tr. at 63, 88) The weight the ALJ gave to the opinions of Dr. Tate was appropriate and consistent with the evidence in the record as a whole.

Ms. Lemons also asserts that the ALJ's credibility analysis was flawed. She said the ALJ did not fully consider her subjective complaints of pain. Before coming to a conclusion on a claimant's credibility, an ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including prior work record, as well as observations by third parties and treating and examining physicians regarding: the claimant's daily activities; the duration, frequency and intensity of pain; precipitating and

aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions. *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984).

Ms. Lemons is not particularly limited in her activities of daily living. She says she could care for her own personal needs, take care of her husband's needs, read, vacuum, prepare four-course meals, wash dishes, make the bed, sweep floors, do laundry, and drive a car. (Tr. at 243-250) Her mother confirmed she could do these activities. (Tr. at 231-234) Ms. Lemons could also shop for groceries, attend church, and visit with family. (Tr. at 247) Such daily activities undermine her claims of disability. See *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). Additionally, Ms. Lemons admitted she had no trouble using her hands, talking, understanding others, getting along with authority figures, and following written and spoken instructions. (Tr. at 248-249) See *Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir. 2001)(acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility).

Ms. Lemons also indicated that her medications helped with pain, and that physical therapy also helped. She said her medications had no side effects. (Tr. at 250) Ms. Lemons's treatment was conservative, and no doctor put any functional restrictions on her. A lack of physician-imposed restrictions may serve as a reason to discredit a claimant's credibility. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003).

The ALJ did not err in finding Ms. Lemons's complaints of pain only partially credible, because they were not supported by other evidence in the record. Subjective

complaints "may be discounted if there are inconsistencies in the evidence as a whole, and the ALJ may properly rely upon discrepancies between [a claimant's] allegations of pain and her treatment history, medicinal selections, and daily activities in disregarding her subjective complaints." *Davis v. Apfel*, 239 F.3d 962, 968 (8th Cir. 2011).

For her final argument, Ms. Lemons suggests that the ALJ erred in finding that hip pain and mental impairments were non-severe, and in not considering whether carpal tunnel syndrome ("CTS") was a severe impairment. The claimant has the burden of proving that an impairment is severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); see *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to do work, then it does not satisfy the "severe impairment" requirement of Step Two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007).

Ms. Lemons complained of hip pain on a number of occasions, but objective imagining did not show abnormalities, and Dr. Troxel indicated that postural limitations arising from hip pain were minimal at most. Medications and therapy helped, and her daily activities reveal that her pain was not as severe as she alleged. With respect to CTS, there is very little medical evidence pointing to problems from CTS, and Dr. Troxel opined that she could lift, carry, finger, and handle. Ms. Lemons herself indicated she did not have problems with using her hands. Neither hip pain nor CTS qualified as a severe

impairment based on the medical evidence.

    Ms. Lemons's mental impairments did not impose a significant restriction on her ability to work. Samuel Hester, M.D., performed a mental diagnostic evaluation on Ms. Lemons on October 12, 2010. (Tr. at 399-405). She reported that she experienced some anxiety but that Prozac had been helping to control the symptoms. (Tr. at 399) She had a history of sexual abuse as a child, but admitted she had never sought mental health treatment. She had never lost a job due to mental health problems, and her mood, affect, speech, thought processes, and thought content were all within normal limits. (Tr. at 402) Dr. Hester assigned a Global Assessment of Functioning score of 55, which indicates moderate symptoms. (Tr. at 15) He said she could communicate effectively and cope with cognitive demands of work-like tasks. (Tr. at 405) She could sustain concentration and persistence on basic tasks. (Tr. at 406) Ms. Lemons likewise reported that she could follow written instructions and finish what she started. (Tr. at 248)

    While Ms. Lemons reported to Dr. Tate on April 14, 2014, that she was anxious and suicidal, she did not have insomnia or depression, and her thought processes and associations were normal. (Tr. at 635-638) Dr. Tate referred her for psychiatric treatment, but she only had one appointment and did not pursue the recommendation to go to Families, Inc. for further psychiatric care. (Tr. at 675-679) She had no inpatient hospitalization or periods of decompensation. The ALJ did not err in finding her mental impairments to be non-severe.

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits.  The ALJ gave proper weight to the opinion of Ms. Lemons's treating physician; the credibility analysis was well-supported; and the ALJ made the proper findings about the severity of her impairments.  The finding that Ms. Lemons was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is, affirmed.  The case is dismissed, with prejudice.

IT IS SO ORDERED this 26th day of January, 2017.

_____
UNITED STATES MAGISTRATE JUDGE